Good morning, Your Honor. Peter Hosherian will be presenting oral arguments for the petitioner Nuna Antonyan in this matter. May it please the Court. The issue in this matter is whether the Board of Immigration Appeals erred in denying the petitioner's request for asylum and withholding removal by concluding that the petitioner had failed to establish a nexus between the harm suffered and a statutorily protected ground. Grava v. the INS has held that, this Court has held that a whistleblower's exposure of government corruption may constitute political activity sufficient to form the basis of persecution on account of political opinion. And when the alleged corruption is inextricably intertwined with governmental operation, exposure and prosecution of such abuse of public trust is necessarily political. So how do you think this case is similar to that one? Well, I believe that in this matter we have to take a close look at the facts. The individual in this case that the petitioner is complaining about was referred to as Andranik throughout the immigration judge's decision. She first complains about his drug dealing activities to the local police. She is then confronted by Mr. Andranik and he tells her that he knows, warns her not to complain. So at that point, we can infer that now Ms. Antonian is aware that Andranik has some kind of a connection with governmental authority. She does not stop her, the police refuse, the local police refuse to do anything about her complaints. And she doesn't stop there. She goes to the general prosecutor's office, takes it a step higher. And again, she's confronted by her neighbor Andranik. And she is physically assaulted by him and his cohorts. And then her husband again goes to his neighbor Andranik and tries to find out what's going on. And he is physically assaulted as well. So I think we know the factual background. I guess my question is, in contrast to Grava, this isn't a pure case of whistleblowing. This is a case where you have basically a criminal activity, a citizen reporting a criminal activity, suffering at the hands of the criminal and the police doing nothing about it for an extended period of time. So what, in your judgment, moves this over into the category of whistleblowing? Well, it does because the connection is inextricably intertwined. Now, Andranik, she's aware that Andranik is now connected with government authority. She takes it to a national level, national security agency, and makes her report there. And then she is taken to their headquarters. And she meets, coincidentally, Andranik is there and warns her in front of the national security agency. Well, he's there in a supposed, as if he's in custody. And he warns her and threatens her there and says, I've got the police in my pocket, and so forth and so on. And nothing is ever done. No prosecution is ever taken of Andranik. Nothing is ever done with him. I mean, it's all one big dog and pony show to make her stop her complaints. And she does not stop there. She gives a written, handwritten complaint, knowing full well that Andranik is connected and derives some kind of benefit from being, from his associate, or vice versa, the government or the political authorities derive some kind of benefit from Andranik's corruption. But even with that knowledge, at what point, what can you point us to that would support your argument that when she does testify, which seems to me to be the most overtly whistleblowing of her activities, that even then the testimony is, is about the corruption within the police department and the prosecutor's office, as opposed to their failure to prevent her neighbor from engaging in the activities that he's engaging in in her apartment complex? Well, it's clear that her, that her knowledge of Andranik now being connected with the government, she is in essence, if she continues her complaints against Andranik, she's in essence whistleblowing against somebody who's now connected with the government. And we can say that he is inextricably intertwined with the government. And I believe, you know, she's been warned on many occasions to stop and that he's got the police in his pocket and that any complaint about Andranik would, in essence, be the exposure of the government's cooperation with Andranik. There didn't seem to be a lot of effort to keep that a secret. In fact, it was just the opposite. There seemed to be a great deal of attention of happy dissemination, cheerful dissemination of the connection in the news. Felice told her to stop the involvement. Andranik told her in front of other people, I have friends in the police department in high places. Prosecutors told her he's got friends in high places. Where is the exposure that wasn't already exposed, and does that matter? Well, I understand your point, Your Honor. And I believe those were efforts to quash her complaints before the government took it to another level and arrested her or physically assaulted her or persecuted her. I believe that their next step in trying to arrest her or subpoenaing her or calling her to the headquarters and threatening her husband that if she does not show up, that he would be arrested, I believe that, going back to your point, the reason they're telling her this is to try to make her shut up, basically, and not make any further complaints without having to take it to another level. But at that point, they said the petitioner is not going to stop. She's going to keep complaining and complaining and complaining, so she's going to be a problem, and now we've got to do something about it. And I reserve the rest of my time for rebuttal. Thank you, counsel. Anyone from the government? May it please the Court. Anna Nelson, First Respondent, Attorney General. The main issue in this case is whether the petitioner established that she held or that her persecutor believed she held a political opinion. Please pull the mic a little closer. Okay. Whether she held a political opinion. Actually, just pulling the mic a little closer to you will help a little bit. There you go. Thank you. Okay. And also whether she was persecuted or fears persecution because of that political opinion. Here, the record just doesn't compel that conclusion. But, you know, the theory of whistleblowing is essentially that you don't have to have a traditional opinion, a political opinion. It's simply an anti-government or imputed anti-government belief. So I think his best argument here is that it's not personal retribution, but because the government was unwilling to control this person, it became an agent of the government, and therefore opposing him became opposing the government. And perhaps it wasn't so in the first two or three instances, but when you get up to the top and they say, you know, we were under orders not to prosecute, it's pretty close. So given that theory, why isn't it awfully close to Grava and those other whistleblowing cases? Grava and Mamouzian and Hassan, they're all much more overt, writing articles, arrested. Here, the evidence just, it doesn't even show his connection to the police. He says that they're in his pocket. No one really explains why he wasn't prosecuted. But isn't she terribly brave at this point to pursue her complaints? You know, given that government connection, she's really putting herself right in the line of fire. She really is brave, and she testifies that she's doing this because she thinks that he's a criminal drug dealer. She's concerned about her children. Really, even in her testimony, that was her main concern, and there's no evidence that anyone thought that she never testified against the police. But doesn't she say that she testified not only about her own interactions with Andranik, but also his statements to her about having police officers in his pocket? That's part of her testimony. And when she testifies, she says in her testimony in front of the I.J. that it was in part about the fact that he did have this relationship with the police, and the I.J. found her credible. That's true. She testified that he had made those comments, but she didn't testify against the government or police officers. And really, her conversations with prosecutors, it sounds like she brought that up and no one really addressed it. And they said that he's a dangerous man, he has influential friends. What more would she have had to say? I think if she had identified police, if something had happened, really her only evidence that anything is police showed up looking for her. I think just based on the record, the evidence doesn't compel the conclusion that she was exposing widespread government corruption. Why does it have to be widespread? I mean, our case law in the past has involved single individuals. In Grava, this Court has said that it needs to be inextricably intertwined. Didn't say widespread. Right. But it's usually more over it. The cases such as Hassan and Mamouzian have stressed the point that it is, I mean it might be one individual, but it's usually an employer who's involved in a bigger scheme of corruption. A similar case is Kazoulin, in which a person makes an accusation against one boss. It happens to be a government official, but it was just an individual claim and they found that that wasn't enough to constitute a political opinion. And in this case, really, her focus is on her criminal neighbor. It wasn't prosecuted. As the IJ found, even if the police weren't helping prosecute, it's not necessarily because they were corrupt or that she was exposing this corruption. It could be various other... What was the record show? The record's insufficient evidence to show... I mean, the only thing the record, as far as I can see, and maybe you can point me elsewhere, is that they were told not to prosecute this person, that he had substantially supporting her conclusion that he was intertwined with the government or the government was unwilling to control his activity. But the government doesn't show... I think it's at 100 of the record, I believe, that the prosecutor said that his boss told him that they weren't going to follow up on the case. She's actually the one. She made the conclusion that she thinks that he's a police informant, that he's involved. There's really... She doesn't even testify that anyone told her about the connection. It's all speculation that she's done. She has come up with this theory. What's the other theory in the record? What's the alternative theory that's supported by the record? Meaning? Her theory is they're not prosecuting because they're in collusion with him. She goes up the chain and everybody says, we're not going to prosecute, get out of the country, watch out. I've been told not to prosecute. That's her testimony. Right. I thought you started to say, maybe I'm wrong, that that's speculation and there was another reason for the government to take its action. Right. Okay, what was that in the record? Well, that's what she states, that she came up with that theory, and there could be other reasons for them not to. Right. I'm asking, what does the record... You say there are other theories. Where are those other theories supported in the record? I'm just saying that there's the possibility. The record doesn't give other theories, and it needs to compel the conclusion that she was whistleblowing and exposing corruption, or that this was the basis, and so that there is a question and a lack that's not necessarily the only theory, but the record doesn't compel the conclusion that... I mean, she made this connection that he was a police informant, but the record doesn't compel that conclusion to reverse the board's decision. What other theory is there? There could be not enough evidence that IJ had suggested because she didn't actually see him dealing drugs. But isn't her testimony about what she was told, that he has friends who work for the police, who work for the prosecutor's office, and that she was told by the investigator at the prosecutor's office that he had been ordered to stop the case. Once she testifies credibly that she has been told these things about the connection and the reasons for the prosecution being dropped by people at the higher levels... Right. ...what other... Isn't that enough evidence in the record to, as you say, compel the conclusion... To reverse... ...in the absence of any other evidence... Right. ...of a theory? You know, I don't understand why our government in such cases can't agree that she's a credible whistleblower exposing corruption in the government. What more? Why can't our government say, yeah, we agree with that? I don't know. I mean, the act, Congress requires that there's a nexus between persecution that she experienced or that she fears on a protected ground. And it's a very specific standard. And this Court has found that whistleblowing and exposing corruption can be one, but it's just very tenuous in this case. I don't see why it's tenuous. Tell me why it's tenuous. Well, comparing it to the other cases, and looking at the Ninth Circuit cases, the ones where they have found it's been a very overt writing articles expressing what has happened. She hasn't exposed anything. She didn't testify against him. She hasn't raised it. There's really her concern with her criminal drug dealer. Are you saying that she was an amateur whistleblower instead of a professional whistleblower? I think it didn't even seem like it was part of her. I mean, now, in immigration proceedings, she has raised this. I believe that her intention wasn't exposing, or the record doesn't show that she was exposing corruption. She really was concerned about her kids, which is completely valid. It's just not a grounds for asylum in the United States. Okay, counsel. Thank you for your argument. We'll hear rebuttal. Thank you. You have a minute and 35. Your Honor, I wish to submit the matter. All right. Very good. The case this matter, I'm sorry, this case will be submitted for decision. We thank you both for your arguments, and we'll hear rebuttal.
judges: Rosenthal, Fletcher B. , Thomas